**FILED**

FEB 1 7 2005

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ABDULLA THANI FARIS AL-ANAZI )
    Detainee )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba, )
                    )

METAB THANI FARIS AL-ANAZI, )
    as Next Friend of Abdulla Thani Faris )
    Al-Anazi; )
                    )

ADEL EGLA HUSSAN AL-NUSSAIRI )    **PETITION FOR WRIT**
    Detainee, )    **OF HABEAS CORPUS**
    Guantánamo Bay Naval Station )    **AND COMPLAINT FOR**
    Guantánamo Bay, Cuba, )    **DECLARATORY AND**
                    )    **INJUNCTIVE RELIEF**

ABDUL RAHMAN AL-SATUM )
    as Next Friend of Adel Egla )
    Hussan Al-Nussairi; )

CASE NUMBER  1:05CV00345

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 02/17/2005

NAIEF FAHAD MUTLAQ AL-OTAIBI, )
    Detainee, )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba, )
                    )

OBAID FAHAD MUTLAQ AL-OTAIBI, )
    as Next Friend of Naief Fahad Mutlaq )
    Al-Otaibi; )
                    )

ABDULAZIZ SA'AD OSHAN, )
    Detainee, )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba, )
                    )

MOHAMMED SA'AD OSHAN, )
    as Next Friend of Abdulaziz Sa'ad )
    Oshan; )
                    )

IBRAHIM SULEIMAN AL-RUBAISH, )
    Detainee )
    Guantánamo Bay Naval Station )
    Guantánamo Bay, Cuba, )
                    )



ABDUL AZIZ SULEIMAN AL-RUBAISH    )
    as Next Friend of Ibrahim Suleiman    )
    Al-Rubaish;    )
        )
*Petitioners/Plaintiffs*    )
        )
        )
v.    )
        )
        )
GEORGE W. BUSH,    )
    President of the United States    )
    The White House    )
    1600 Pennsylvania Avenue, N.W.    )
    Washington, D.C. 20500;    )
        )
DONALD RUMSFELD,    )
    Secretary, United States    )
    Department of Defense    )
    1000 Defense Pentagon    )
    Washington, D.C. 20301-1000;    )
        )
ARMY BRIG. GEN. JAY HOOD,    )
    Commander, Joint Task Force-GTMO    )
    JTF-GTMO    )
    APO AE 09360; and    )
        )
ARMY COL. BRYCE GYURISKO,    )
    Commander, Joint Detention    )
    Operations Group, JTF-GTMO    )
    JTF-GTMO    )
    APO AE 09360,    )
        )
*Respondents/Defendants.*    )

## PETITION FOR WRITS OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Petitioners Abdulla Thani Faris Al-Anazi ("Detainee Al-Anazi"), Adel Egla

Hussan Al-Nussairi ("Detainee Al-Nussairi"), Naief Fahad Mutlaq Al-Otaibi ("Detainee

Al-Otaibi"), Abdulaziz Sa'ad Oshan ("Detainee Oshan") and Ibrahim Suleiman Al-

Rubaish ("Detainee Al-Rubaish") (collectively "Detained Petitioners"), civilians

designated as "enemy combatants" by the President of the United States, are being held

virtually *incommunicado* in military custody at the United States Naval Station at

Guantánamo Bay, Cuba ("Guantánamo") without basis, without charge, without access to

counsel and without being afforded any fair process by which they might challenge their

designation and detention, by color and alleged authority of the Executive, and in

violation of the Constitution, laws and treaties of the United States, as well as customary

international law. Accordingly, this Court should issue Writs of Habeas Corpus, and

order injunctive and declaratory relief.

# I.
# PARTIES

### Abdulla Thani Faris Al-Anazi

1.     Detainee Al-Anazi seeks a Writ of Habeas Corpus. He acts on his own

behalf and through his Next Friend, Metab Thani Faris Al-Anazi, his brother. Detainee

Al-Anazi is a Saudi Arabian citizen who is presently incarcerated and held in

Respondents' unlawful custody at Guantánamo.

2.     Detainee Al-Anazi is the second of twenty-five brothers and sisters. He

married Ayesha Emeeth Al-Inzi. Six months after he was married, he left Saudi Arabia

to perform charity work abroad.

3.     On information and belief, Detainee Al-Anazi was kidnapped while in

Afghanistan on a charitable mission and sold for a bounty to American soldiers.

3

4.     On information and belief, Detainee Al-Anazi is a double amputee, having
lost both of his legs below the knee as a result of injuries sustained sometime after
arriving in Afghanistan.  The cause of his injuries is unknown.

5.     While his family members have periodically received some
correspondence from him, they have not been able to speak with him or verify his health,
condition or well-being.  In the letters and poems he has sent home, he maintains his
innocence.

### Adel Egla Hussan Al-Nussairi

6.     Detainee Al-Nussairi seeks a Writ of Habeas Corpus.  He acts on his own
behalf and through his Next Friend, Abdul Rahman Al-Satum, his cousin.  Detainee Al-
Nussairi is a Saudi Arabian citizen who is presently incarcerated and held in
Respondents' unlawful custody at Guantánamo.

7.     On information and belief, Detainee Al-Nussairi was detained while on a
charitable mission to Afghanistan.  While his family members have periodically received
some correspondence from him, they have not been able to speak with him nor verify his
health, condition or well-being.  In the letters he has sent home, he maintains his
innocence.

### Naief Fahad Mutlaq Al-Otaibi

8.     Detainee Al-Otaibi seeks a Writ of Habeas Corpus.  He acts on his own
behalf and through his Next Friend, Obaid Fahad Mutlaq Al-Otaibi, his brother.  Detainee

Al-Otaibi is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody at Guantánamo.

9.      Detainee Al-Otaibi was a minor when he was first detained.

10.      Prior to September 11, 2001, Detainee Al-Otaibi traveled to the Pakistani-Afghanistan border region to provide humanitarian aid.

11.      On information and belief, Detainee Al-Otaibi was taken by bounty hunters to American authorities while in the region.

12.      His family members have received only three letters from him, and they have not been able to speak with him or verify his health, condition or well-being. In the letters he has sent home, he maintains his innocence.

### Abdulaziz Sa'ad Oshan

13.      Detainee Oshan seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Mohammed Sa'ad Oshan, his brother. Detainee Oshan is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody at Guantánamo.

14.      Detainee Oshan graduated from the College of Imam Mohammed Al Saud in Riyadh, like his brother Mohammed. Shortly after graduating, he traveled to Afghanistan on a short-term charitable mission before beginning work in the Saudi Arabian Ministry of Education, where his brother Mohammed is a supervisor.

5

15.     On information and belief, he was seized while in Afghanistan and transferred to Guantánamo.

16.     While his family members have periodically received some correspondence from him, they have not been able to speak with him or verify his health, condition or well-being.  The letters they receive have been delayed for long periods of time and have been censored.

### Ibrahim Suleiman Al-Rubaish

17.     Detainee Al-Rubaish seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Abdul Aziz Suleiman Al-Rubaish, his brother. Detainee Al-Rubaish is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody at Guantánamo.

18.     Detainee Al-Rubaish had traveled to Pakistan for eye surgery and to do charitable work.  On information and belief, he was singled out for being Arab and captured by Pakistani tribesmen, who sold him for a bounty to American authorities.  On information and belief, he was then transferred to Guantánamo Bay.

19.     While his family members have periodically received some correspondence from him, or others on his behalf, they have not been able to speak to him since his transfer to Guantánamo or verify his health, condition or well-being.

20.     On information and belief, Detained Petitioners are being held virtually *incommunicado* in military custody at Camp Delta, at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by

which they might challenge their purported designation as "enemy combatants" or their

detention, by color and alleged authority of the Executive, and in violation of the

Constitution, laws and treaties of the United States as well as customary international

law.

### Respondents

21.     Respondent George W. Bush is the President of the United States and

Commander-in-Chief of the United States Military.  On information and belief,

Respondent Bush asserts that he is authorized to detain Detained Petitioners pursuant to

his authority as Commander-in-Chief and under the laws and usages of war or,

alternatively, pursuant to the Military Order of November 13, 2001, Exec. Order No.

12,958, 66 Fed. Reg. 57,833 (2001) ("Executive Order").  President Bush is responsible

for the unlawful detention of Detained Petitioners and is sued in his official capacity.

22.     Respondent Donald Rumsfeld is the Secretary of the United States

Department of Defense.  Purportedly pursuant to either the Executive Order or the

President's authority as Commander-in-Chief and under the laws and usages of war,

Respondent Rumsfeld has been charged with maintaining the custody and control of

Detained Petitioners.  He is sued in his official capacity.

23.     Respondent Brigadier General Jay Hood is the Commander of Joint Task

Force-GTMO, the task force running the detention operation at Guantánamo.  He has

supervisory responsibility for Detained Petitioners and is sued in his official capacity.

24.      Respondent Colonel Brice Gyurisko is the Commander of the Joint

Detention Operations Group and the JTF-GTMO detention camps, including the U.S.

facility where Detained Petitioners are presently held. He is the immediate custodian

responsible for Detained Petitioners' detention and is sued in his official capacity.

## II.
## JURISDICTION

25.      Detained Petitioners bring this action pursuant to 28 U.S.C. §§ 2241(c)(1),

(c)(3) and 2242, and invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350,

1651, 2201, and 2202; 5 U.S.C. §§ 702 and 706; Articles I, II and III of, and the Fifth,

Sixth, and Eighth Amendments to, the United States Constitution; International Covenant

on Civil and Political Rights; the American Declaration on the Rights and Duties of Man;

the Convention on the Rights of the Child; the Geneva Conventions; the Vienna

Convention on Consular Relations; and customary international law. Because they seek

declaratory relief, Detained Petitioners also rely on Fed. R. Civ. Proc. 57.

26.      This Court is empowered under 28 U.S.C. § 2241 to grant these Writs of

Habeas Corpus, and to entertain the Petitions filed by Messrs. Al-Anazi, Al-Satum, Al-

Otaibi, Oshan, and Al-Rubaish as Next Friends under 28 U.S.C. § 2242. This Court is

further empowered to entertain the Petitions pursuant to *Rasul v. Bush,* 124 S. Ct. 2686

(2004). This Court is empowered to declare the rights and other legal relations of the

parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all

necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual

controversy within the Court's jurisdiction.

8

## III.
## STATEMENT OF FACTS

27.     On information and belief, Detained Petitioners are being held virtually *incommunicado* in military custody at Camp Delta, at the United States Naval Station at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which they might challenge their designation and detention, and by asserted color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States, as well as customary international law.  On information and belief, Detained Petitioners have not been proven to be and in fact are not, nor have they ever been, either enemy aliens, lawful or unlawful belligerents, or combatants of any kind, or "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *See Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

28.     On information and belief, at the time of their detention, Detained Petitioners were not members of the Taliban Government's armed forces, al Qaeda, or any other type of terrorist or radical group; nor did they cause or attempt to cause any harm to American personnel or property prior to their detention.  They remain incarcerated at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

## The Joint Resolution

29.     In the wake of the attacks on the United States that occurred on September

11, 2001, the United States, at the direction of President Bush, began a military campaign

against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a

Joint Resolution of Congress authorized President Bush to use force against the "nations,

organizations, or persons" that "planned, authorized, committed, or aided the terrorist

attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint

Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224

(Jan. 18, 2001) ("Joint Resolution").

## The Executive Order

30.     On November 13, 2001, Respondent Bush issued an Executive Order

authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has

"reason to believe":

> "(i)     is or was a member of the organization known as al Qaeda;

> (ii)     has engaged in, aided or abetted, or conspired to commit, acts of

international terrorism, or acts in preparation therefor, that have caused, threaten to cause,

or have as their aim to cause, injury to or adverse effects on the United States, its citizens,

national security, foreign policy, or economy; or

> (iii)    has knowingly harbored one or more individuals described in

subparagraphs (i) and (ii)."

See Executive Order.  According to the terms of the order, President Bush

must make this determination in writing.  *Id.*  The Executive Order was neither

authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001, and violates the Constitution, laws and treaties of the United States, and customary international law.

31.    The Executive Order vests President Bush with complete discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be held without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

32.    The Executive Order was promulgated in the United States and in this judicial district, and, on information and belief, the decision to incarcerate Detained Petitioners was made by Respondents in the United States and in this judicial district, the decision to detain Detained Petitioners at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Detained Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

11

33. On information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Detained Petitioners are subject to the Executive Order.

34. Detained Petitioners are not properly subject to the Executive Order, and, in any event, the Executive Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the United States and customary international law. Detained Petitioners are being detained unlawfully purportedly pursuant to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

35. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at Guantánamo. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center. Offenses committed by both civilians and foreign nationals living at Guantánamo are brought before United States District Courts, where respondents enjoy the full panoply of Constitutional rights. Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S. Ct. 2686 (2004).

36. Detained Petitioners are being held at Guantánamo, in the custody of President Bush and Respondents Rumsfeld, Hood, and Gyurisko.

12

## The Conditions of Detention at Guantánamo

37.    Since gaining control of Detained Petitioners, the United States military has held them virtually *incommunicado*. On information and belief, they have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, although they have not been charged with any offense, and have not been notified of any pending or contemplated charges. On information and belief, they have made no appearances before a military or civilian tribunal authorized to test the legality of their detention, they have not been provided counsel or the means to contact counsel, and they are being held under conditions that violate their international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment. On information and belief, they have not been informed of their rights under domestic or international law. On information and belief, Detained Petitioners have been forced to provide involuntary statements to Respondents' agents at Guantánamo.

38.    Respondents claim that their conduct was and is authorized by the President's authority as Commander-in-Chief of the United States Military and/or the Executive Order. Respondents' acts were not, and are not, so authorized, and in fact violate Detained Petitioners' rights under, *inter alia*, the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the Vienna Convention on Consular Relations, the Convention on the Rights of the Child, and customary international law.

39.    On information and belief, Detained Petitioners have been held under

conditions that violate their international and constitutional rights to dignity and freedom

from cruel, unusual and degrading treatment or punishment.  Reports of these violations

include being placed in solitary confinement and denied exercise; being required to wear

full restraints, including leg-irons; being given an inadequate diet; and being denied

contact visits with families.  *See* Amnesty International, United States of America:

Human Dignity Denied: Torture and Accountability in the 'War on Terror,' at 22 (Oct.

27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR511452004) (last

visited Jan. 25, 2005); *see also* Barry C. Scheck, Abuse of Detainees at Guantánamo Bay,

The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.  Indeed,

many of these violations - including isolation for up to 30 days, 28-hour interrogations,

extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of

clothing, hooding, and the use of dogs to create anxiety and terror - were actually

interrogation techniques approved for use at Guantánamo by the most senior Department

of Defense lawyer.  *See* Action Memo from William J. Haynes II, General Counsel DOD,

to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group Report on Detainee

Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy

and Operational Considerations, at 62-65 (Apr. 4, 2003).[1]

---

[1]Details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in
a statement by several recently released British detainees. *See* Shafiq Rasul Asif Iqbal & Rhuhel Ahmed,
*Composite Statement: Detention in Afghanistan and Guantánamo Bay,* 300, *at* http://www.ccr-
ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf) (last visited Jan. 25, 2005).  The
Department of Defense also informed the Associated Post that a number of interrogators at Guantánamo
have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report
Details Guantánamo Abuses,* Assoc. Press, Nov. 4, 2004.

40.    On information and belief, Detained Petitioners have been forcibly compelled to violate fundamental tenets of their faith through a deliberate pattern of torture targeted at devout Muslims. *See, e.g.*, Ex-G.I. Writes About Use of Sex in Guantánamo Interrogations, Assoc. Press, Jan. 28, 2005 (detailing interrogation tactic of smearing fake menstrual blood by a female interrogator on face of detainee in order to make him feel impure).

41.    In published statements, President Bush and Respondent Rumsfeld, and previous military commanders at Guantánamo, have proclaimed that the United States may hold Detained Petitioners under these conditions indefinitely. *See, e.g.*, Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that al Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); John Mintz, Extended Detention In Cuba Mulled, The Wash. Post, Feb. 13, 2002 ("As the Bush administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

42.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Jan. 25, 2005).

43.     Petitioners incorporate paragraphs 1 - 42 in each of the below claims for relief as if fully set forth therein.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (DUE PROCESS – FIFTH AMENDMENT
### TO THE CONSTITUTION OF THE UNITED STATES –
### UNLAWFUL DEPRIVATION OF LIBERTY)

44.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

45.     Respondents, acting under color of law, have violated and continue to violate, *inter alia*, the Fifth Amendment to the Constitution of the United States. Respondents' actions deny Detained Petitioners the process accorded to persons seized and detained by the United States.

46.     To the extent that Detained Petitioners' detention is authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Detained Petitioners, and is, in any event, otherwise unlawful in its entirety.

47.     Accordingly, Detained Petitioners are entitled to habeas, declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

### SECOND CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT
### TO THE CONSTITUTION OF THE UNITED STATES -
### UNLAWFUL CONDITIONS OF CONFINEMENT)

48.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

49.     Respondents, acting under color of law, have violated and continue to violate the rights of Detained Petitioners to be free from arbitrary, prolonged, and indefinite detention and unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States by, *inter alia,* detaining them indefinitely in conditions that are an affront to human dignity.  On information and belief, Detained Petitioners have been held in conditions of isolation; placed under constant threat of repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

50.     The President's Executive Order of November 13, 2001, as applied to Detained Petitioners, violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

17

51.   Accordingly, Detained Petitioners are entitled to habeas, declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
## (ARBITRARY DENIAL OF DUE PROCESS – GENEVA CONVENTIONS)

52.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

53.   Respondents, acting under color of law, have denied and continue to deny Detained Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

54.   Violations of the Geneva Conventions are direct treaty violations, and are also violations of customary international law.

55.   Respondents are liable for this conduct described above directly and in so far as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

56.   Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
## (VIENNA CONVENTION ON CONSULAR RELATIONS – UNLAWFUL DENIAL OF RIGHT TO CONSULAR ACCESS)

57.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

58.    Respondents have denied and continue to deny Detained Petitioners the process accorded to citizens of State Parties to the Vienna Convention on Consular Relations ("VCCR"). As Saudi Arabians detained by the United States, Detained Petitioners have the right under the VCCR to be informed that consular officials of his country may be notified about the detention. If the Detained Petitioners so request, consular officials must be notified of the detention and given access to Detained Petitioners.

59.    Because Respondents are detaining Detained Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Detained Petitioners' claims arise under 28 U.S.C. § 2241 and they are entitled to habeas relief as well as any other relief the court may deem appropriate.

60.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
## (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW-
## ARBITRARY DENIAL OF DUE PROCESS)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    Respondents have denied and continue to deny Detained Petitioners the process accorded to persons seized and detained by the United States as established by specific provisions of the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the Convention on the Rights of the Child, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

63.    Because Respondents are detaining Detained Petitioners "under or by color of the authority of the United States" and "in violation the Constitution or laws or treaties of the United States," Detained Petitioners' claims arise under 28 U.S.C. § 2241 and they are entitled to habeas relief as well as any other relief the court may deem appropriate.

64.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SIXTH CLAIM FOR RELIEF
## (ALIEN TORT CLAIMS ACT –
## VIOLATIONS OF THE LAW OF NATIONS)

65.     Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

66.     Respondents directed, ordered, confirmed, ratified, and/or conspired to

bring about acts that deliberately and intentionally inflicted severe physical and

psychological abuse and agony upon Detained Petitioners in order to obtain coerced

information or confessions from them, punish or intimidate Detained Petitioners or for

other purposes.  On information and belief, Detained Petitioners have been held in

conditions of isolation; placed under constant threat of repeated interrogation and severe

beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in

solitary confinement for minor rule infractions for prolonged periods of time;

interrogated while shackled and chained in painful positions; exposed to extremes of

temperature; subjected to violent behavior or the threat of violence; threatened with

rendition to countries that practice torture; sexually humiliated; forcibly compelled to

violate fundamental tenets of their faith; denied access to counsel and family; deprived of

adequate medical care; and subjected to repeated psychological abuse.

67.     The acts described herein had the intent, and the effect, of grossly

humiliating and debasing Detained Petitioners, forcing them to act against their wills and

consciences, inciting fear and anguish, and breaking their physical or moral resistance.

68.     The acts described herein constitute torture; war crimes and/or crimes

against humanity, committed in violation of the applicable provisions of the Geneva

Conventions and the Additional Protocols thereto; cruel, inhuman or degrading treatment; arbitrary arrest and prolonged arbitrary detention; and enforced disappearances in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting these crimes as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities, including, *inter alia*, Common Article III of the Geneva Conventions, Additional Protocol II of the Geneva Conventions, the Fourth Geneva Convention, and Additional Protocol I of the Geneva Conventions.

69.     The acts described herein constitute arbitrary arrest and detention of Detained Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

70.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Detained Petitioners in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the violations of the law of nations against Detained Petitioners.

72.     As a result of Respondents' unlawful conduct, Detained Petitioners have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse and agony, and are therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

**SEVENTH CLAIM FOR RELIEF**
**(ARTICLE II OF THE UNITED STATES CONSTITUTION –**
**UNLAWFUL DETENTION)**

73.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.     Detained Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized outside the theater of war or occupied territory who are not engaged in hostilities against the United States.

75.     By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Detained Petitioners and transfer them to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue

to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Detained Petitioners.

76.     The military seizure and detention of Detained Petitioners by the Respondents is *ultra vires* and illegal being in violation of Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioners' detention is purportedly authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioners.

77.     Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF
## (VIOLATIONS OF THE ADMINISTRATIVE PROCEDURES ACT)

78.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.     Respondents have detained Detained Petitioners in violation of Army Regulation 190-8, which prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory and who were not engaged in combat against the United States.  *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

80.    By arbitrarily and capriciously detaining Detained Petitioners in military custody for nearly three years in the manner described above; by denying Detained Petitioners the process afforded to persons seized and detained by the U.S. Military in times of armed conflict pursuant to Army Reg. 190-8; and by directing, ordering, conforming, ratifying, or conspiring to torture unlawfully Detained Petitioners in violation of Army Reg. 190-8, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 and 706(2).

81.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## NINTH CLAIM FOR RELIEF
## (CHILDREN IN ARMED CONFLICT –
## ARBITRARY DENIAL OF DUE PROCESS)
## AS TO DETAINEE AL-OTAIBI

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.    The Convention on the Rights of the Child provides for special protection of children in detention.  In addition, the Optional Protocol to the Convention on the Rights of the Child on the Involvement of Children in Armed Conflict ("Protocol on Child Soldiers"), and International Labour Organization Convention 182 Concerning the Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labour ("ILO Convention 182") accord Detainee Al-Otaibi, a child under 18 years of age at the time of his detention, special processes and protections.

84.     Violations of the Protocol on Child Soldiers and ILO Convention 182 are direct treaty violations, and are also violations of customary international law.

85.     By the actions described above, Respondents have denied Detainee Al-Otaibi those special processes and protections due to him under the Protocol on Child Soldiers and ILO Convention 182.  Respondents are liable for the conduct described above directly and insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Protocol on Child Soldiers and ILO Convention 182.

86.     Accordingly, Detainee Al-Otaibi is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (LACK OF MILITARY JURISDICTION OVER CHILDREN – UNLAWFUL DETENTION)
### AS TO DETAINEE AL-OTAIBI

87.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

88.     Under United States law, the U.S. military does not have jurisdiction over children under the age of 18 years of age at the time of their alleged violations of military law or regulations, except as to children of 17 years of age who enlisted with the permission of a parent or other legal guardian.  *See* 10 U.S.C. §§ 802 and 821.

89.     On information and belief, Detainee Al-Otaibi was a child of 17 years of age at the time of his initial detention and during relevant times relating to his

interrogation and other alleged mistreatment by U.S. military personnel as set forth

above. He was not enlisted in any armed force or group, nor, on information and belief,

did his parents or other legal guardian ever grant permission for such enlistment.

Respondents, therefor, never had military jurisdiction over Detainee Al-Otaibi and may

not continue to exercise military jurisdiction over him.

90.    The exercise of military jurisdiction over Detainee Al-Otaibi is *ultra vires*

and unlawful in violation of 10 U.S.C. §§ 802 and 821 or any other jurisdictional

provision of U.S. military law.

91.    Accordingly, Detainee Al-Otaibi is entitled to habeas, declaratory, and

injunctive relief as well as any other relief the court may deem appropriate.

## V.
## PRAYER FOR RELIEF

WHEREFORE, for the above stated and other such reasons as may appear

to this Court, Petitioners pray for relief as follows:

1.    Designate Metab Thani Faris Al-Anazi as Next Friend of Abdulla Thani

Faris Al-Anazi;

2.    Designate Abdul Rahman Al-Satum as Next Friend of Adel Egla Hussan

Al-Nussairi;

3.    Designate Obaid Fahad Mutlaq Al-Otaibi as Next Friend of Naief Fahad

Mutlaq Al-Otaibi;

4.    Designate Mohammed Sa'ad Oshan as Next Friend of Abdulaziz Sa'ad

Oshan;

5.      Designate Abdul Aziz Suleiman Al-Rubaish as Next Friend of Ibrahim
Suleiman Al-Rubaish;

6.      Order Detained Petitioners released from Respondents' unlawful custody;

7.      Order Respondents to allow counsel to meet and confer with Detained
Petitioners in private and unmonitored attorney-client conversations;

8.      Order Respondents to inform Detained Petitioners of their right to
consular access, and to allow Detained Petitioners to meet with consular officials if
Detained Petitioners so request.

9.      Order Respondents to cease all interrogations of Detained Petitioners,
direct or indirect, while this litigation is pending;

10.     Order Respondents to cease all acts of torture and abuse of Detained
Petitioners;

11.     Order and declare the Executive Order of November 13, 2001, *ultra vires*
and unlawful in violation of the Fifth Amendment to the United States Constitution; *ultra
vires* and unlawful in violation of Article II of the United States Constitution; *ultra vires*
and unlawful as a violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 and
706; and unlawful as a violation of the treaties of the United States and customary
international law;

12.     Order and declare that Detained Petitioners are being held in violation of
the Fifth Amendment to the United States Constitution; and that the prolonged, indefinite,
and restrictive detention of Detained Petitioners is arbitrary and unlawful, a deprivation
of liberty without due process in violation of the Fifth Amendment to the United States

28

Constitution, and in violation of the treaties of the United States and customary international law;

13.    Order and declare that Detained Petitioners are being held in violation of the treaties of the United States and customary international law, and are being held in violation of the regulations of the United States Military, the Geneva Conventions, and customary international humanitarian law;

14.    Order and declare that the detention of Detainee Al-Otaibi is in violation of 28 U.S.C. §§ 802 and 821, the Protocol on Child Soldiers, the Conventions on the Rights of the Child, ILO Convention 182, and customary international law;

15.    Order Respondents to provide Petitioners immediately with factual returns detailing the bases upon which Detained Petitioners are allegedly being detained;

16.    To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which Petitioners may adduce proof in support of their allegations;

17.    Provide Petitioners an opportunity to engage in full and fair discovery, and the right to amend this Petition; and

18.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the United States Constitution, federal statutory law, and international law.

Dated:  February 17, 2005

Respectfully submitted,

Counsel for Petitioners:

David R. Berz (DC 182105)
David A. Hickerson (DC 414723)
Anant Raut (DC 490211)
Jahna M. Hartwig (DC 480440)
Connie M. Ericson (DC 471840)
Claire A. Watkins (DC 485880)
WEIL GOTSHAL & MANGES LLP
1501 K Street, N.W.
Suite 100
Washington, D.C.  20005
Tel:  (202) 682-7000
Fax:  (202) 857-0939

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated:  February 17, 2005

_____

David R. Berz (DC 182105)
David A. Hickerson (DC 414723)
Anant Raut (DC 490211)
Jahna M. Hartwig (DC 480440)
Connie M. Ericson (DC 471840)
Claire A. Watkins (DC 485880)

WEIL GOTSHAL & MANGES LLP
1501 K Street, N.W.
Suite 100
Washington, D.C.  20005
Tel:  (202) 682-7000
Fax:  (202) 857-0939

## CERTIFICATE OF SERVICE

I, Anant Raut, hereby certify that on February 17, 2005, I caused true and correct copies of the Petition For Writ of Habeas Corpus and Complaint For Declaratory and Injunctive Relief to be served on the following persons:

### By Hand Delivery:

Kenneth L. Wainstein
U.S. Attorney
District of Columbia District
555 4th Street, NW
Washington, DC 20530

### By Certified Mail With Return Receipt:

Alberto R. Gonzales
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, DC 20530

George W. Bush
President, United States of America
The White House
1600 Pennsylvania Avenue, NW
Washington, DC 20301-1000

Donald Rumsfeld
Secretary, United States Dep't of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Army Brig. Gen. J. Hood
Commander, Joint Task Force-GTMO
JTF-GTMO
APO AE 09360

Army Col. Brice Gyurisko
Commander, JDOG
JTF-GTMO
APO AE 09360

**By Email:**

Terry Henry
Senior Trial Attorney
Federal Programs Branch
Civil Division – Room 7144
Department of Justice
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Terry.Henry@usdoj.gov

Andrew Warden
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
andrew.warden@usdoj.gov

Anant Raut